**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BARBARA J. WEHRENBRECHT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Case No. 4:12CV1788 NCC** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.**[1] | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Barbara J. Wehrenbrecht (Plaintiff) for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 et seq., and for Supplemental Security Income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. Plaintiff has filed a brief in support of the Complaint. (Doc. 18). Defendant has filed a brief in support of the Answer. (Doc. 24). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). (Doc. 26).

**I.**
**PROCEDURAL HISTORY**

On September 15, 2010, Plaintiff filed her applications for DIB and SSI, with a disability onset date of January 23, 2010. (Tr. 114-119). Plaintiff's applications were denied and she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 8). After a hearing, by

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she should be substituted for Michael J. Astrue as the defendant. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Act.

decision dated March 26, 2012, the ALJ found Plaintiff not disabled. (Tr. 8-15). The Appeals Council denied Plaintiff's request for review. (Tr. 1-3). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. See id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC). See Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984).

"Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> The concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. See Krogmeier, 294 F.3d at 1022. See also Eichelberger, 390 F.3d at 589;

Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be

produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

>(1) the claimant's daily activities;
>
>(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
>(3) any precipitating or aggravating factors;
>
>(4) the dosage, effectiveness, and side effects of any medication; and
>
>(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. See id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him or her to reject the plaintiff's complaints. See Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he or she considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ

need only acknowledge and consider those factors.  See id.  Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence.  See Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments.  20 C.F.R. § 404.1545(b)-(e).  The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy.  See Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)).  The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work.  See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.  The Commissioner has to prove this by substantial evidence.  Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983).  Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities.  See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used.  An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff's limitations, but only those which he finds credible.  See Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180.  Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons.  See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v.

Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. See Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff, who was born in 1963, had a tenth grade education. In an undated Disability Report, Plaintiff alleged disability due to carpal tunnel syndrome pain, numbness, and immobility in her arms, wrists, and hands, and diabetes. She also stated she was 5 feet 6 inches tall, weighed 195 pounds, completed the tenth grade, and previously worked as a waitress and for a newspaper doing "ad sales/data entry." (Tr. 160-61). At the February 8, 2012 hearing, Plaintiff testified that, in the past year, she gained 25 pounds because she was unable to do things that she had previously done; she had not worked for three or four years; she was let go from her newspaper job after she had carpal tunnel surgery; her hand strength was weaker than it previously had been and she dropped things; she had just started a 6-month course of physical therapy; her diabetes was "doing okay"; she slept 3-4 hours because her arms "ache[d], hurt"; she "maybe" could walk half a block; and she had difficulty concentrating because her life had become "so depressing." (Tr. 33-41, 44-45).

The ALJ first noted that Plaintiff had previously filed an application for benefits which had been denied by an ALJ, by decision dated January 22, 2010; Plaintiff did not appeal that decision; the prior ALJ's decision was subject to res judicata; and, in fact, Plaintiff alleged in her

current application that her disability did not begin until January 23, 2010.  After considering the record as a whole, including Plaintiff's medical records and testimony, the ALJ found that Plaintiff met the earnings requirements through December 31, 2012; she had not engaged in substantial gainful activity since her alleged onset date of January 23, 2010; Plaintiff had obesity, bilateral carpal tunnel syndrome, some degenerative disc disease of the cervical spine, Type II diabetes, hyperlipidemia, and mild depression controlled by medication and conservative treatment; Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity requirements of any listed impairment; and Plaintiff's allegations that the severity of her impairments prevented her from performing any sustained work activity was not credible.  The ALJ found Plaintiff had the RFC to perform the physical exertional and non-exertional requirements of work except for lifting or carrying more than 10 pounds frequently or more than 20 pounds occasionally, or doing frequent or constant grasping, clutching, twisting, or squeezing with either hand or upper extremity.  He further found that Plaintiff had no credible, medically-established mental or other non-exertional limitations. Finally, the ALJ found that Plaintiff's past relevant work as an advertising insert clerk and data input operator for a newspaper did not require the performance of work-related activities precluded by her RFC, and that Plaintiff, therefore, was not disabled as defined in the Act, through the date of his decision.  (Tr. 8-15).

Plaintiff argues the ALJ's decision is not supported by substantial evidence because, upon formulating her RFC, the ALJ failed to consider the impact of both her severe and non-severe impairments on her ability to work; upon concluding that Plaintiff could perform her past relevant work, the ALJ provided no specific findings or analysis regarding the physical and mental demands of this work; the ALJ did not obtain the testimony of a VE despite Plaintiff's

having non-exertional impairments; and the ALJ's RFC assessment was conclusory and did not contain any rational or reference to the supporting evidence. For the following reasons, the court finds that Plaintiff's arguments are without merit and that the ALJ's decision is based on substantial evidence.

**A.      Plaintiff's Credibility:**

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including the severity of Plaintiff's alleged impairments and her RFC. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010). As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ. See Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882.

To the extent that the ALJ did not specifically cite Polaski, other case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See

Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996).

In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered, in regard to Plaintiff's diabetes, that she did not exercise, did not always check her blood sugar levels as advised, and sometimes did not follow a prescribed diet. (Tr. 11). See Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (claimant's failure to comply with prescribed medical treatment and lack of significant medical restrictions is inconsistent with complaints of disabling pain). Indeed, it was reported on August 24, 2010, in regard to Plaintiff's diabetes, that when she was asked about meal planning, she reported "none" and that she rarely exercised. (Tr. 324). On January 26, 2011, it was reported that although Plaintiff had been diagnosed with diabetes six years prior and was on medication for it, "she ha[d] done this inconsistently x 2 years." (Tr. 346). On April 14, 2011, it was reported that Plaintiff had a problem with eating a lot of candy and even got up in the middle of the night and ate candy, and that she had recently started exercising some, and she was taking all of her

medication.  Smoking cessation was encouraged on this date.  (Tr. 392).  On November 3, 2011, it was reported that Plaintiff was continuing to smoke cigarettes and was not currently exercising.  (Tr. 586).

Second, the ALJ considered that Plaintiff's mild depression was controlled by medication.  (Tr. 11, 336).  Also, Plaintiff reported, on November 24, 2010, that medication helped with paraesthesias and with neuropathy symptoms, although her afternoon doses caused her to become tired.  (Tr. 333, 335).  See Schultz v. Astrue, 578 F.3d 838, 946 (8th Cir. 2007) (conditions which can be controlled with medication are not disabling).

Third, the ALJ considered diagnostic test results and the absence of testing for certain conditions.  (Tr. 11-12).  While an ALJ may not disregard subjective pain allegations solely because they are not fully supported by objective medical evidence, an ALJ is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence.  See 20 C.F.R. § 416.908, 406.929; Forte v. Barnhart, 377 F.3d 892, 895 (8th Cir. 2004); Ramirez v. Barnhart, 292 F.3d 576 (8th Cir. 2002).  Additionally, it is proper for an ALJ to consider the absence of objective medical evidence to support a claimant's complaints of disabling pain, although the ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence.  See Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010) (citing Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir. 2008)).

The ALJ considered that, although Plaintiff complained of numbness in her feet and although there was a tentative diagnosis of peripheral neuropathy related to her diabetes, this diagnosis was never validated by nerve testing.  (Tr. 11).  The impression from a March 8, 2010 x-ray of the right hand and wrist was a "radiographically negative exam."  (Tr. 712-14).  When

Plaintiff complained of right elbow and hand pain in June 2010, x-rays showed only mild degenerative changes and EMG and nerve conduction studies showed evidence of carpal tunnel syndrome, a bit worse on the right side, but no other neuropathies. (Tr. 11, 220-21, 223-24). On June 29, 2010, Martin Wice, M.D., reported that an elctromyographic study of Plaintiff's upper extremities revealed "normal insertional activity, and normal motor units and recruitment proportional to effort." (Tr. 223).

On September 7, 2010, Donald Pruitt, M.D., reported that x-rays showed "widening of the scaphclunate space of an uncertain age" and no arthritic changes. (Tr. 241-42). When Plaintiff complained of bi-lateral shoulder pain in November 2010, x-rays of both shoulders were negative for fracture, subluxation, and bone erosion. (Tr. 11, 426). After Plaintiff complained of left knee pain, in June 2011, studies of her left knee, in July 2011, showed no joint effusion, fracture, dislocation or focal bone lesion and that the joint spaces and articular surfaces were "fairly well-maintained," although patellar spurring was noted. (Tr. 12, 423, 627). An April 2011 bone density study of Plaintiff's back and neck was normal. (Tr. 12, 425). A November 15, 2011 x-ray of the cervical spine showed "moderate degenerative changes at C5-6. (Tr. 695). The impression from a December 1011 MRI of the cervical spine was "spondylosis but no frank cord compression." (Tr. 858). When Plaintiff presented with abdomen pain, a December 14, 2011 CT showed mild fatty infiltration of the liver and no acute abdominal or pelvic disease. (Tr. 11, 889, 902).

Fourth, the ALJ considered the observations of doctors upon examining Plaintiff. See Orrick v. Sullivan, 966 F.2d 368, 372 (8th Cir. 1992) (ALJ may give more weight to medical records than to claimant's testimony); Polaski, 739 F.2d at 1322 (ALJ must consider observations of claimant's treating and examining doctors). In particular, Dr. Wice reported, on

June 29, 2010, that Plaintiff had "relatively good muscle mass and normal muscle tone"; her strength was intact; and there was good vascular supply throughout both arms without any significant edema. (Tr. 222). On September 7, 2010, Dr. Pruitt reported that Plaintiff was well-developed, in no acute distress, alert and oriented, and her mood and affect were normal; she had normal range of motion of the right wrist and no pain to palpation at the scapholunate junction; and she had numbness and tingling in the fourth and fifth fingers. (Tr. 241).

On November 24, 2010, Plaintiff was oriented and had normal mood and affect and was alert and oriented; she displayed normal reflexes; her coordination was normal; and both shoulders had "pain to extremes of motion," but no swelling or point tenderness. Plaintiff reported on this date that her depression and anxiety were "currently stable, she ha[d] no concerns or complaints." (Tr. 334-38). On February 16, 2011, Plaintiff was oriented and had normal mood and affect; her behavior was normal; she had normal range of motion in her neck and musculoskeletal system, although she exhibited pain in her left shoulder; she was negative for weakness; and she had normal muscle tone, coordination, and gait. (Tr. 355-57). On March 16, 2011, David Strege, M.D., reported that Plaintiff was alert and oriented; she had normal range of motion of both elbows and diffuse trigger point tenderness throughout both volar forearms; she had no pain with resisted wrist flexion, "other than minimally at the medial epicondyle bilaterally"; she was "non-tender in the area of the carpal tunnel and ha[d] a well-healed surgical wound"; and, neurologically, she had "no intrinsic atrophy or weakness." (Tr. 244-45). In November 2011, Plaintiff was alert and oriented; she had no cervical spine tenderness or deformity; she had "painless neck range of motion"; she ambulated with a normal gait; and there was "no evidence of generalized ligamentous laxity"; her right and left upper

extremities were neurovascularly intact; and she had tenderness to a rotator cuff incision. (Tr. 599-600).

Fifth, the ALJ considered that Plaintiff declined surgery in September 2010 after she was diagnosed with possible scapolunte instability of the right wrist. (Tr. 11, 241-42).

Sixth, the ALJ considered that, although Plaintiff last had surgery for carpal tunnel syndrome, there had been no further recommendation for surgery and there was no evidence Plaintiff had seen her hand surgeon since September 2008. (Tr. 13). See Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003) ("[T]he ALJ concluded, and we agree, that if her pain was as severe as she alleges, [Plaintiff] would have sought regular medical treatment."). Additionally, the ALJ noted the record did not show Plaintiff had physical therapy in recent years. (Tr. 13). Also, in June 2011, Dr. Pruitt reported that he would not recommend any further surgical intervention for the arms and forearms. (Tr. 244).

Seventh, the ALJ considered that no doctor who had treated or examined Plaintiff, since January 22, 2010, had stated or implied that she was disabled or totally incapacitated, or placed Plaintiff on any long-term limitations in regard to her ability to stand, sit, walk, bend, lift, carry, or do other basic exertional activities. (Tr. 13). A record that does not contain any physician opinion of disability or total inability to work detracts from the claimant's subjective complaints. See Reney v. Barnhart, 396 F.3d 1007, 1011 (8th Cir. 2005); Anderson v. Shalala, 51 F.3d 777, 780 (8th Cir. 1995); Edwards v. Sec'y of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987); Fitzsimmons v. Mathews, 647 F.2d 862, 863 (8th Cir. 1981).

Ninth, the ALJ considered that during the administrative hearing Plaintiff displayed no obvious signs of depression, anxiety, memory loss, or other mental disturbance. (Tr. 14). While an ALJ cannot accept or reject subjective complaints *solely* on the basis of personal observations,

Ward v. Heckler, 786 F.2d 844, 847-48 (8th Cir. 1986), an ALJ's observations of a claimant's appearance and demeanor during the hearing is a consideration, see Steed v. Astrue, 524 F.3d 872, 876 (8th Cir. 2008) (holding that an ALJ "is in the best position" to assess credibility because he is able to observe a claimant during his testimony); Johnson v. Apfel, 240 F.3d 1145, 1147-48 (8th Cir. 2001) ("The ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations"); Jones v. Callahan, 122 F.3d 1148, 1151 (8th Cir. 1997) ("When an individual's subjective complaints of pain are not fully supported by the medical evidence in the record, the ALJ may not, based solely on his personal observations, reject the complaints as incredible."). Here, to reach his conclusion, the ALJ combined his review of the record as a whole with his personal observations.

In conclusion, the court finds that the ALJ's consideration of Plaintiff's credibility is based on substantial evidence and consistent with the Regulations and case law.

**B.     Plaintiff's RFC:**

As stated above, Plaintiff contends the ALJ's RFC determination is not supported by substantial evidence because he did not consider the combination of her severe and non-severe impairments.

The Regulations define RFC as "what [the claimant] can do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting

McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Anderson v. Shalala, 51 F.3d. 777, 779 (8th Cir. 1995). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual functional capacity is a medical question.'" Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id. See also Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); Eichelberger, 390 F.3d at 591.

Upon determining Plaintiff's RFC the ALJ properly considered Plaintiff's credibility. See Pearsall v. Massanari, 274 F.3d 12211, 1218 (8th Cir. 2001) (prior to determining claimant's RFC, ALJ should consider claimant's credibility). Further, consistent with the Regulations and case law, the ALJ considered the objective medical evidence and the observations of doctors. After doing so, the ALJ considered the extent to which Plaintiff's physical and mental limitations affected her ability to engage in work-related physical and mental activities. See Social Security Regulation (SSR) 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s),

including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). In doing so, the ALJ addressed each of Plaintiff's alleged impairments.

As for Plaintiff's obesity, the ALJ found that there was no evidence that it reduced her overall functional abilities, either by itself or in combination with other medically-established impairments. See SSR 02-01p, 2000 WL 628049, at *2-5 (ALJ should do individual assessment of the impact of obesity on claimant's functioning when deciding whether impairment is severe); 20 C.F.R., Pt. 404, Subpt. P, App. 1, 1.00, Q ("[W]hen determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity."). The ALJ further found that Plaintiff had no serious, uncontrollable physical impairment that was not related to her hands or upper extremities; her diabetes was under good control; there was no evidence of functional limitations related to her neck despite disc disease; she had only minor changes in the left knee; and there was no medical evidence she could not stand or walk normally.

As for Plaintiff's alleged depression, the ALJ noted Plaintiff did not seek professional help. Additionally, as noted above in regard to Plaintiff's credibility, she was often reported to be alert and well oriented; her depression was stable on medication; and she required no hospitalization for a mental condition. Also, she had no long-term or sustained course of mental health treatment from a mental health professional. Further, pursuant to 20 C.F.R. § 404.1520a(c)(3)-(4), and (d)(1)-(3), the ALJ determined that there was no credible evidence that Plaintiff had restrictions of daily living or maintaining social functioning; she had no recorded or

credible deficiencies in concentration, persistence or pace; there was no credible evidence she had any marked, extreme, or even moderate inability to function independently, appropriately, and effectively, and on a sustained basis; and she had no recorded episodes of decompensation. Thus, consistent with the Regulations, the ALJ concluded Plaintiff had no limitation in her ability to do basis work activities based on mental functioning. Only after addressing the above factors relevant to Plaintiff's physical and mental conditions did the ALJ determine that Plaintiff's impairments did not meet the severity requirements of a listed impairment, individually or in combination. The court finds that the ALJ's determination, in this regard, is based on substantial evidence.

As further required, the ALJ identified Plaintiff's functional limitations and restrictions in terms of her work-related ability on a function-by-function basis, and concluded that her impairments, singly or in combination, did not produce symptoms and limitations sufficient to prevent the performance of any sustained work related activity. (Tr. 15). See Masterson, 363 F.3d at 737; Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004) (upon making an RFC assessment, an ALJ must first identify a claimant's functional limitations or restrictions, and then assess his or her work-related abilities on a function-by-function basis).

Indeed, the ALJ considered limitations caused by Plaintiff's neck and back pain and carpal tunnel syndrome in formulating her RFC, to the extent he found such limitations credible, as he found she could lift or carry no more than 10 pounds frequently or more than 20 pounds occasionally. He also found she could not frequently or constantly grasp, clutch, twist or squeeze either hand or her upper extremities. The ALJ found, other than what he included in Plaintiff's RFC, that she had no credible, medically-established limitations. The court finds that this conclusion is based on substantial evidence.

To the extent Plaintiff suggests the ALJ did not incorporate limitations in her RFC which the ALJ did not find severe, including a non-severe mental impairment, a claimant's RFC need only include a plaintiff's credible limitations. See Tindell v. Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of Tindell's credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record."). The court finds, therefore, that the ALJ was not required to include any limitations beyond those which he included in Plaintiff's RFC, and that the ALJ's RFC determination is based on substantial evidence.

To the extent Plaintiff argues the ALJ's RFC determination is conclusory, the court finds Plaintiff is incorrect; the ALJ addressed Plaintiff's medical records in considerable detail, made specific findings regarding any limitations in her ability to perform work-related activity, and considered Plaintiff's assertions; only after doing so did the ALJ make his RFC determination. In conclusion, the court finds that the ALJ's RFC determination is based on substantial evidence and that all arguments Plaintiff makes to the contrary are without merit.

**C.      Past Relevant Work and VE Testimony:**

The ALJ found that Plaintiff's RFC did not preclude her performing her past relevant work as an advertising insert clerk and data input operator as she described and performed it. (Tr. 12, 15). After making this determination the ALJ found Plaintiff not disabled, without soliciting the testimony of a VE. Plaintiff contends the ALJ did not consider the requirements of this past relevant work when determining that she could these jobs, and that the ALJ should have obtained the testimony of a VE.

In a Work History Report, included in the record, Plaintiff stated that in her job in advertising sales and data input clerk for a newspaper she took inbound and outbound calls, used

a computer, conducted sales of help wanted ads, and provided customer service. Her job required writing and the completion of reports, walking, standing, sitting, stooping, crouching, writing, typing and handling small objects 8-hours each day. She also lifted less than 10 pounds. (Tr. 168). Further, at the hearing Plaintiff testified that her job at the newspaper was a more of "sit-down type job," and she did typing and phone and computer work in this job. (Tr. 35).

The Social Security regulations define "past relevant work" as "work experience [which] ... was done within the last fifteen years, lasted long enough for [the claimant] ... to learn to do it, and was substantial gainful activity." 20 C.F.R. § 404.1565(a). If the claimant is found to be able to perform the duties of her past relevant work, then she is considered not disabled and therefore ineligible for benefits. See Bowen v. City of New York, 476 U.S. 467, 471 (1986); Martin v. Sullivan, 901 F.2d 650, 652 (8th Cir. 1990).

The Eighth Circuit has commented that when determining whether a claimant can perform past relevant work, the following considerations are appropriate:

> According to the Secretary's interpretation, sections 404.1520(e) and 416.920(e) require careful consideration of the interaction of the limiting effects of the person's impairment(s) and the physical and mental demands of his or her PRW to determine whether the individual can still do that work.

> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issues as clearly and explicitly as circumstances permit.

> Sufficient documentation will be obtained to support the decision. Any case requiring consideration of PRW will contain enough information on past work to permit a decision as to the individual's ability to return to such past work....

> Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations. Detailed information about strength, endurance, manipulative ability,

mental demands and other job requirements must be obtained as appropriate. This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source . . . .

Groeper v. Sullivan, 932 F.2d 1234, 1238 (8th Cir. 1991) (citing SSR 82-62).

Indeed, SSR 82-62 requires that an ALJ has an obligation to "'fully investigate and make explicit findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant herself is capable of doing before he determines that she is able to perform her past relevant work.'" Id. at 1238 (quoting Nimick v. Sec'y of Health and Human Servs., 887 F.2d 864, 866 (8th Cir. 1989). Moreover, where the record contains substantial evidence that claimant can perform past work, the ALJ's failure to develop past work record in full detail does not require remand. See Battles v. Sullivan, 902 F.2d 657, 659 (8th Cir. 1990).

"An ALJ's decision that a claimant can return to [her] past work must be based on more than conclusory statements. The ALJ must specifically set forth the claimant's limitations." Id. Further, the ALJ must determine how a claimant's limitations affect her RFC. He must make explicit findings regarding the actual physical and mental demands of the claimant's past work. The ALJ then should compare the claimant's RFC with the actual demands of her past work to determine whether she is capable of performing the relevant tasks. Id.

Plaintiff's description of her job at the newspaper did not require that she carry more than 10 pounds frequently or more than 20 pounds occasionally, or that she frequently or constantly grasp, clutch, twist, or squeeze with either hand or upper extremity. See Zeiler v. Barnhart, 384 F.3d 932, 936 (8th Cir. 2004) (ALJ properly relied on plaintiff's description of her duties in performing her past relevant work). Thus, the court finds that substantial evidence supports the ALJ's determination that Plaintiff could perform her past relevant work as a newspaper

advertising clerk and data input operator. As such, the ALJ was not required to proceed further with the sequential analysis, and properly found Plaintiff not disabled based on her ability to perform her past relevant work. <u>See</u> 20 C.F.R. § 404.1560(b)(3) (if claimant has RFC to perform past relevant work, claimant will be found not disabled; there is no need to consider whether vocational factors of age, education, and work experience or whether claimant's past relevant work exists in significant numbers); 20 C.F.R. § 404.1520(a)(4)(iv)(f). To the extent the ALJ did not specifically address the requirements of Plaintiff's past relevant work in his decision, the court will affirm as the record contains substantial evidence to support the ALJ's conclusion. <u>See</u> <u>Battles</u>, 902 F.2d at 659.

Further, because the ALJ found Plaintiff did not have any non-exertional limitations, <u>see</u> <u>Sanders v. Sullivan</u>, 983 F.2d 822, 823 (8th Cir. 1992), and because he found that she could perform her past relevant work, the ALJ was not required to obtain the testimony of a VE. <u>See</u> <u>Groeper v. Sullivan</u>, 932 F.2d 1234, 1235 n.1 (8th Cir. 1991) (VE testimony not required where claimant ALJ determines claimant can perform past relevant work). In conclusion, the court finds that the ALJ's determination that Plaintiff could perform her past relevant work and that she, therefore, was not disabled is based on substantial evidence.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and Brief in Support of Complaint is **DENIED**; Docs. 1, 18.

**IT IS ORDERED** that a separate judgment be entered incorporating this Memorandum

and Order.

Dated this 16th day of September, 2014.

                                       /s/ Noelle C. Collins
                                         NOELLE C. COLLINS
                                         UNITED STATES MAGISTRATE JUDGE